United States Court of Appeals,

Eleventh Circuit.

No. 95-6480.

Barbara Carol GODFREY, Plaintiff-Appellee, Cross-Appellant,

v.

BELLSOUTH TELECOMMUNICA-
TIONS, INC.;  South Central Bell,
Defendants-Appellants, Cross-Appellees.

July 26, 1996.

Appeals from the United States District Court for the Northern District of Alabama. (No. CV94-C-1386-S), U.W. Clemon, Judge.

Before CARNES, Circuit Judge, and FAY and GIBSON[*], Senior Circuit Judges.

FAY, Senior Circuit Judge:

An employee of BellSouth Telecommunications ("BST") brought suit against the company to enforce the provisions of her sickness and disability benefit plans.  The District Court found that the plaintiff was disabled under the terms of the plan contracts, and that the plan administrators had arbitrarily and capriciously rejected her claims.  We affirm.

I. BACKGROUND

Carol Godfrey began working for BellSouth in 1963.  By 1990 she had earned several promotions.  However, in June of 1990 she became ill. Her family doctor referred her to several specialists, who diagnosed her with:  fibromyalgia;  a thirty degree angle of pressure on the spine;  lumbar disc syndrome;  rotator cuff disease;  severe sciatic pain and sacral pain;  chronic dorsal

_____

[*]Honorable John R. Gibson, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

lumbar strain; and joint swelling pain. The District Court found that the evidence conclusively proved that her pain was severe and disabling.

Ms. Godfrey was treated with several very potent drugs which she had to take on a daily basis, including: Lorcet Plus, a narcotic pain medication whose main side effect is drowsiness; Flexeril, a muscle relaxer whose main side effect is drowsiness; and Donnatal, an anti-colonurgic medicine whose main side effect is blurred vision. In addition, she had to undergo regular physical therapy.

In June of 1990, when she first started to experience the debilitating pain, Ms. Godfrey submitted a claim for benefits under BST's Sickness and Accident Disability (SAD) Plan. The District Court found that she provided BST with more than ample evidence of her disability, including physician's certificates from at least four doctors. BellSouth's manager denied Sickness Benefits and the review committees denied Ms. Godfrey's appeals.

In January of 1991, BST informed Ms. Godfrey that she would have to return to work or be discharged. At that point, according to the District Court:

> [w]ith a dependent son, the plaintiff had no real choice other than to dope herself up with the medications that had been prescribed for her and get in the car, contrary to medical advice, drive herself to work, and then work while under the influence of a combination of very potent drugs.

Despite the debilitating pain, Ms. Godfrey was physically able to show up for work on a fairly regular basis. However, the District Court found that on some days she simply could not get to work. Because of her sickness, her attendance record was the worst of any

employee in the unit, and she was disciplined for her absences. Because she returned to work, however, she did not become eligible for benefits under the Long-Term Disability Plan (LTD), which requires the exhaustion of fifty-two weeks of disability benefits under the sickness plan.

Ms. Godfrey filed complaints of discrimination and harassment with BST in November of 1991 and January of 1992. In addition, she filed grievances with the union. On January 20, 1993, all of her complaints were denied, except BST reduced one of her suspensions by two days. She filed suit on May 5, 1994 in state court.

The case was removed to federal court. Godfrey amended her complaint to add a claim under ERISA, the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461. The District Court ruled that Godfrey was not entitled to extra-contractual or punitive damages under 29 U.S.C. § 1132(a)(1)(B), § 1132(a)(3), or § 1140. After a bench trial, the court found that Godfrey was disabled under the terms of the sickness and disability benefit plans from June of 1990 to October 1, 1993. The court issued an injunction ordering BST to comply with ERISA and pay Godfrey $58,300.50 in benefits. BST appealed the judgment. Godfrey cross-appealed the District Court's determination that she was not entitled to extra-contractual or punitive damages.

## II. STANDARD OF REVIEW

We review conclusions of law *de novo* but do not disturb findings of fact unless they are clearly erroneous. *See U.S. v. Thomas*, 62 F.3d 1332, 1336 (11th Cir.1995), *cert. denied*, --- U.S. ----, 116 S.Ct. 1058, 134 L.Ed.2d 202 (1996). Equitable remedies

will not be disturbed unless the District Court abused its discretion or made an error of law, or unless the findings of fact are not supported by the evidence. *See Planned Parenthood Ass'n of Atlanta Area, Inc. v. Miller,* 934 F.2d 1462, 1471 (11th Cir.1991).

Where the administrator of an ERISA benefits plan has discretionary authority to determine eligibility for benefits, a court reviews that determination under the arbitrary and capricious standard. *Brown v. Blue Cross and Blue Shield of Alabama,* 898 F.2d 1556, 1559 (11th Cir.1990). However, such a determination is not entitled to as much deference where the administrator has a conflict of interest. *Id.* at 1566.

> [A] wrong but apparently reasonable interpretation is arbitrary and capricious if it advances the conflicting interest of the fiduciary at the expense of the affected beneficiary or beneficiaries unless the fiduciary justifies the interpretation on the ground of its benefit to the class of all participants and beneficiaries.

*Id.* At 1566–67.

> [T]he fiduciary's interpretation first must be "wrong" from the perspective of a de novo review ...

*Id.* at 1566, n. 12.

### III. ANALYSIS

*A. The District Court did not err when it found that Godfrey was denied benefits under the Sickness and Accident Disability Plan in violation of ERISA Sections 502(a)(1)(B) and (a)(3), 29 U.S.C. § 1132(a)(1)(B) and § 1132(a)(3).*

Using the test outlined above, we review the decision in this case under the arbitrary and capricious standard. *Brown,* 898 F.2d at 1559. However, such a determination is not entitled to as much deference if the administrator had a conflict of interest. *Brown,* 898 F.2d at 1566. In such a case, we first conduct a *de novo* review to decide if the determination was wrong. *Id.*

BST argues that there was no conflict of interest, even though BST self-administered the plan and paid benefits from its operating expenses. According to BST, it would have had to pay Godfrey regardless of the determination by the plan administrator; either it would have paid Godfrey benefits or it would have paid her wages. In addition, according to BST, it did not save the cost of a replacement worker because it did not hire a replacement worker when Godfrey was out, and it might not have hired one if she had been granted benefits. However, if BST granted benefits to Godfrey, it would have either had to hire a replacement worker or lose the services of an employee in that position. The BST plan administrators had a conflict of interest.

Because of this conflict of interest, BST's determination could be arbitrary and capricious even if it was only "a wrong but apparently reasonable interpretation." *Brown,* 898 F.2d at 1566. The District Court found that the determination was indeed wrong, and that Godfrey was disabled under the terms of the ERISA benefit plans.

Ms. Godfrey sought benefits under two benefit plans. In order to receive benefits under the first plan, the Sickness and Accident Disability Plan, a participant must fulfill five requirements. The only one that BST claimed that Godfrey did not meet was the requirement that the plan participant furnish satisfactory evidence of her disability. The plan did not specifically define disability, but paid benefits when a participant was "temporarily disabled from work by reason of sickness."

BST argues that this language required Godfrey to show that

she had a loss of function which would prevent her from doing her job duties. Thus BST's Medical Director considered that Ms. Godfrey was able to move her extremities without constraint despite the fusion in her spine. The plan administrators testified that they accepted the diagnoses of Godfrey's condition from her doctors, but, as one of BST's medical consultants stated, "pain alone does not substantiate disability."

The plan is designed to pay benefits when a participant is "disabled from work by reason of sickness." Nothing in the plan requires BST's narrow interpretation of the language. "Disabled from work" can mean more than physical paralysis or limited limb movement.

Dr. McLain, one of Godfrey's treating physicians, testified that fibromyalgia can be severely disabling and can only be diagnosed by an examination of the patient. The court found that BST's physicians arbitrarily rejected the clear medical evidence she submitted without even examining her themselves or seeking the treatment notes of her doctors. Moreover, they ignored the effects of the medication that Godfrey had to take on a daily basis due to her condition.

> It seems to the court that the only rational explanation for the failure of the defendant's physicians to follow up on evidence which they did have and to ignore the effects of the medications that the plaintiff was taking is that *they knew that in fact the plaintiff was disabled* and following up leads and considering the effect of the medications would only confirm what any reasonable doctor would have already known.

Thus the court found that BST's wrong determination "advance[d] the conflicting interest of the fiduciary at the expense of the affected beneficiary." *Brown,* 898 F.2d at 1567. Because BST could

not justify its determination "on the ground of its benefit to the class of all participants," *id.,* the denial of benefits was arbitrary and capricious and violated ERISA Sections 502(a)(1)(B) and (a)(3), 29 U.S.C. § 1132(a)(1)(B) and (a)(3). The District Court determined that from June 15, 1990 until January 21, 1991, Ms. Godfrey was disabled and out of work and that she was entitled to benefits under the SAD plan for that time period. The record fully supports this finding.

*B. The District Court did not err when it found that BST violated Section 510 of ERISA, 29 U.S.C. § 1140.*

After BST arbitrarily and capriciously denied Godfrey benefits under the sickness plan, BST required the disabled plaintiff to return to work or lose her job. The District Court found that:

> [w]ith a dependent son, the plaintiff had no real choice other than to dope herself up with the medications that had been prescribed for her and get in the car, contrary to medical advice, drive herself to work, and then work while under the influence of a combination of very potent drugs.

Thus the court found that although Godfrey was disabled under the terms of the sickness plan, she was physically able to show up at her place of employment. However, her attendance record was the worst of any employee in her unit due to her disability, and she was disciplined for her absences. Because she returned to work in January of 1991 and because thereafter she was suspended and threatened with discharge whenever she stayed home, she lost her eligibility for benefits under the SAD plan and she did not become eligible for benefits under the Long-Term Disability (LTD) Plan.

Section 510 of ERISA makes it:

> unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled

under the provisions of an employee benefit plan, ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.

29 U.S.C. § 1140.

Of course an employer may demand that an employee return to work after determining that the employee is not disabled, and then discipline that employee for unexcused absences. The employer does not violate ERISA Section 510 just because a court later determines that the employer's good faith disability determination was wrong. However, ERISA Section 510 does prohibit an employer from threatening to fire a disabled[1] employee *in order for the employer to* avoid paying further benefits.

In this case, the District Court specifically found: that BST threatened to discharge Godfrey if she stayed home and disciplined her when she did stay home, even though she had the right to stay home under the benefit plans; that BST did so, at least in part, in order to prevent Godfrey from becoming eligible for further benefits; and that from January 21, 1991 until October 1, 1993, Godfrey was disabled and BST unlawfully acted to prevent her from obtaining benefits under the SAD plan and from becoming eligible for benefits under the LTD plan. The record fully supports these findings.

BST argues that Godfrey's claim under Section 510 was barred by the two year statute of limitations.[2] BST threatened to

---

[1]Using the definition of disability in the relevant benefit plan.

[2]The applicable statute of limitations for this case is two years. *See Musick v. Goodyear Tire & Rubber Co.,* 81 F.3d 136, 137 (11th Cir.1996).

discharge Godfrey in January of 1991 and she was suspended for excessive absenteeism in 1991, but she did not bring suit until May 5, 1994. Godfrey counters, however, that she had to exhaust any administrative remedies before she could bring suit, *see Springer v. Wal-Mart Associates' Group Health Plan,* 908 F.2d 897, 899 (11th Cir.1990), and so the statute of limitations did not begin to run until she did so on January 20, 1993.

Godfrey did file complaints of discrimination and harassment with BST in November of 1991 and January of 1992. In addition, she filed grievances with the union. On January 20, 1993, all of her complaints were denied, except BST reduced one of her suspensions by two days.

These administrative procedures were not specifically provided for in the benefit plans, and BST argues on appeal that Godfrey was not required to file an administrative appeal in this case. However, BST argued in its motion for summary judgment before the District Court that Godfrey had failed to exhaust her administrative remedies in regard to the Section 510 claim because her administrative complaint dealt only with the denial of benefits and not with any retaliation. BST argued in the District Court that Godfrey was required to seek administrative remedies before she could file this suit. Accepting such a position, the final action here was on January 20, 1993, and the suit was filed well within the statute of limitations. BST cannot raise for the first time on appeal the argument that Godfrey did not have to complain administratively in this case, *see FDIC v. Verex Assurance, Inc.,* 3 F.3d 391, 395 (11th Cir.1993), and so we must conclude that BST's

final action was on January 20, 1993.  The suit was filed within the statute of limitations.[3]

*C. The District Court did not err in refusing to set off Godfrey's benefits award by the wages she received.*

Although the District Court found that Godfrey was disabled, she did return to work on January 21, 1991 and received wages from that point on.  Those wages would normally prevent her from receiving benefits under the SAD plan or the LTD plan, but because BST violated Section 510 of ERISA the District Court could order BST to pay benefits for that period.  However, BST contends that those benefits should be offset by the wages that Godfrey was paid by BST.  Those wages exceed the amount of benefits that Godfrey would have received, and so BST argues that even if it did violate ERISA Sections 502 and 510, Godfrey is entitled to no relief.

Normally, of course, a disabled employee will not collect wages.  In this case, however, the District Court found that Ms. Godfrey was disabled under the terms of the benefit plans, even though she was able to physically show up for work and earn wages.  Under ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3), the court has the power to grant equitable relief to redress violations of ERISA or violations of the benefit plan.  In this case, BST arbitrarily and capriciously determined that Godfrey was not disabled, and threatened to fire her if she did not come back to work.  The District Court found that Godfrey had no real choice but to return to work.

---

[3]We express no opinion on whether a participant in an ERISA plan must exhaust administrative remedies available to her through her employer but not specified in the ERISA plan itself.

Because of BST's arbitrary and capricious determination, Godfrey had to show up for work while disabled under the terms of her benefit plan. BST's decision was not only wrong, but arbitrary and capricious. We cannot say that the District Court abused its decision when, under the equitable power of ERISA Section 502(a)(3), it refused to offset the benefits award by the amount Godfrey received in wages. BST was wrong, and the court did not have to give it credit for being wrong. If the benefits award was offset by her wages, then BST (and other companies that self-administer their ERISA plans) would have an incentive to do the same thing in the future: if the employer could threaten or cajole a disabled[4] employee into returning to work, it could obtain the rewards of having an employee in that position without hiring a replacement and without paying anything in benefits.[5]

*D. The District Court did not err in holding that compensatory and punitive damages are not available under ERISA Sections 502 or 510, 29 U.S.C. § 1132 or § 1140.*

In *Bishop v. Osborn Transportation, Inc.,* 838 F.2d 1173 (11th Cir.), *cert. denied,* 488 U.S. 832, 109 S.Ct. 90, 102 L.Ed.2d 66 (1988), this Court held that ERISA Sections 502(a)(1)(B), 502(a)(3), and 510, 29 U.S.C. § 1132(a)(1)(B), § 1132(a)(3), or § 1140, do not provide for extra-contractual or punitive damages. As this Court later noted in *McRae v. Seafarers' Welfare Plan,* 920

---

[4]Using the definition of disability in the relevant benefit plan.

[5]We do not suggest that an employer or the administrator of an ERISA plan should not make an informed decision concerning the ability of an employee to work. However, if such a decision is thereafter found to be arbitrary and capricious (wrong) there may well be financial consequences.

F.2d 819, 821 (11th Cir.1991), the holding in *Bishop* was not affected by *Ingersoll-Rand Co. v. McClendon,* 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990). The District Court did not err in holding that extra-contractual damages are not available in this case; a plan beneficiary can sue to enforce her rights under the plan and under ERISA, and for equitable relief, but not for punitive or compensatory damages.

## IV. CONCLUSION

We conclude that the District Court applied the correct rules of law and the appropriate standards when it found that BST violated ERISA Sections 502 and 510, when it refused to offset the benefits award, and when it denied Godfrey extra-contractual damages. The judgment is AFFIRMED.