Elaine RUSSELL, Plaintiff,

v.

UNUM LIFE INSURANCE COMPANY OF AMERICA, Defendant.

No. 6:99–0224–20.

United States District Court,
D. South Carolina,
Greenville Division.

March 30, 1999.

Robert E. Hoskins, Greenville, SC, for plaintiff.

Theodore D. Willard, Jr., Columbia, SC, for defendant.

## ORDER

HERLONG, District Judge.

This ERISA[1] matter is before the court on the parties' cross-motions for summary judgment. Elaine Russell ("Russell") seeks to recover long-term disability ("LTD") benefits under a group insurance policy ("the Plan") issued by UNUM Life Insurance Company of America ("UNUM"). Russell suffers from several ailments and has been diagnosed with fibromyalgia. The Plan has a one-year limitation on payments for disabilities caused by "self-reported symptoms." (Def.'s Cross–Mot.Summ.J. at 4.) Citing this limitation, UNUM offered to pay Russell one year's worth of benefits. Russell seeks full LTD benefits. For the reasons set forth below, Russell is entitled to full LTD benefits.

### I. STATEMENT OF THE FACTS

Russell worked for several years for Delta Woodside Industries, Inc. and was covered under a LTD insurance policy issued by UNUM. The Plan provides: "Disabilities, due to sickness or injury, which are primarily based on self-reported symptoms . . . have a limited pay period up to 12 months." (Pl.'s Mot.Summ.J. at 2.) The Plan defines "self-reported symptoms" as: "[T]he manifestations of your condition which you tell your doctor, that are not verifiable using tests, procedures or clinical examinations, standardly accepted in the practice of medicine." (Id.) The Plan also expressly grants UNUM the authority to interpret the terms of the Plan and determine an insured's eligibility for benefits. See (Def.'s Cross–Mot.Summ J. at 3.)

During the last twenty years, Russell has been hospitalized for various maladies. As early as May of 1996, Dr. Richard G. Taylor, Jr. diagnosed Russell with "chronic pain syndrome" or "fibromyalgia." (Pl.'s Mot.Summ.J. Ex. H2.) In April of 1997,

Russell sought treatment for her condition from Dr. John Riley. After treating Russell for over one year, Dr. Riley concluded that Russell suffers from fibromyalgia. See (Id.) Specifically, Dr. Riley attests that: (1) Russell has "noticeable changes on her MRI which clearly objectively demonstrate conditions which contribute to her problems;" (2) fibromyalgia is diagnosed via the presence of certain "pressure points" and that Russell "has demonstrated sensitivity to the relevant 'pressure points';" and (3) the medical tests conclude that Russell suffers from fibromyalgia, "degenerative joint disease and polyarthrolgia." (Id.)

### II. PROCEDURAL HISTORY

Russell ceased working in July 1997 and filed a claim for LTD benefits under the Plan on July 23, 1997. On September 22, 1997, UNUM denied Russell's claim because it found that Russell did not work at least thirty hours a week and, therefore, was ineligible for disability benefits. See (Def.'s Cross–Mot.Summ.J. at 7.) Russell appealed the denial and UNUM affirmed its decision on December 30, 1997. Russell then obtained counsel and sought further review of UNUM's decision on January 26, 1998. On February 20, 1998, UNUM determined that Russell was eligible for benefits, reversed its decision denying her claim, and began further investigation of Russell's alleged disability. See (Pl.'s Mot.Summ.J. Ex. C.)

After reviewing Russell's medical records, UNUM determined that Russell was disabled. In a letter dated May 19, 1998, UNUM informed Russell that her disability fell under the "self-reported symptom" limitation and, therefore, she was entitled to only one-year's worth of benefits. Russell appealed this determination and sought LTD benefits. To support her LTD claim, Russell submitted the medical records of Dr. Richard G. Taylor, Jr., Dr. John P. Taylor, and an affidavit from Dr. John Riley. See (Id. at 5.)

---

1. Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461.

UNUM continued to seek information from these physicians through January of 1999. Rather than wait any longer for UNUM's decision, Russell filed the instant action on January 26, 1999. Russell submitted her motion for summary judgment on February 17, 1999. On March 4, 1999, UNUM filed its cross-motion for summary judgment.

### III. DISCUSSION OF THE LAW

### A. Review of ERISA Claim

#### 1. Standard of Review

■ In this ERISA case, the standard of review of the administrator's decision is for "modified" abuse of discretion. Normally, "[i]n cases where the benefit plan grants the administrator or fiduciary discretionary authority to determine eligibility or to construe the terms of the plan, the denial decision must be reviewed for abuse of discretion." *Ellis v. Metropolitan Life Ins. Co.*, 126 F.3d 228, 232 (4th Cir.1997) (citing, e.g., *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 111, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)). This standard is deferential, and "the administrator['s] ... decision will not be disturbed if it is reasonable." *Id.* (citing, e.g., *Bruch*, 489 U.S. at 115, 109 S.Ct. 948). "Such a decision is reasonable if it is 'the result of a deliberate, principled reasoning process and it is supported by substantial evidence.'" *Id.* (quoting *Brogan v. Holland*, 105 F.3d 158, 161 (4th Cir.1997) (citation omitted)).

However, "[t]he Supreme Court has recognized that where a plan administrator or fiduciary is vested with discretionary authority and is 'operating under a conflict of interest, that conflict must be weighed as a "factor[ ] in determining whether there is an abuse of discretion." ' " *Id.* at 233 (second alteration in original) (citations omitted). Consequently, the abuse of discretion standard remains, but "the court applies the conflict of interest factor, on a case by case basis, to lessen the deference normally given under this standard of review only to the extent necessary to counteract any influence unduly resulting from the conflict." *Id.* In short, the court

> modifies th[e] abuse of discretion standard according to a sliding scale. The more incentive for the administrator or fiduciary to benefit itself by a certain interpretation of benefit eligibility or other plan terms, the more objectively reasonable the administrator or fiduciary's decision must be and the more substantial the evidence must be to support it.

*Id.*

In the instant case, there is no dispute that UNUM has discretionary authority over the Plan. *See* (Pl.'s Reply Mem. at 1–2.) In addition, UNUM suffers from a conflict of interest by being both the insurer and administrator of the plan. The United States Court of Appeals for the Fourth Circuit has made clear that a conflict exists when the insurer of a plan also exercises discretionary control over the administration of the plan:

> In this case, Blue Cross insured the plan in exchange for the payment of a fixed premium, presumably based on actuarial data. Undoubtedly, its profit from the insurance contract depends on whether the claims allowed exceed the assumed risks. To the extent that Blue Cross has discretion to avoid paying claims, it thereby promotes the potential for its own profit. That type of conflict [of interest] flows inherently from the nature of the relationship entered into by the parties and is common where employers contract with insurance companies to provide and administer health care benefits to employees through group insurance contracts.

*Doe v. Group Hospitalization & Med. Servs.*, 3 F.3d 80, 86 (4th Cir.1993). The Fourth Circuit implied that a "mechanism to collect from the employer retrospectively for unexpected liabilities" could remove the conflict. *Id.* In the instant case, however, the insurance policy between UNUM and Delta Woodside makes no mention of

any such mechanism, and no other evidence has been presented to show such a mechanism. As a result, the court will apply the less deferential "modified" abuse of discretion standard.

### 2. Scope of Review

■ The court's review should be limited to the evidence that was before the administrator unless there are exceptional circumstances warranting the consideration of additional evidence. *See Quesinberry v. Life Ins. Co. of N. Am.* 987 F.2d 1017, 1025–27 (4th Cir.1993). In the court's discretion, such circumstances may include:

> claims that require consideration of complex medical questions or issues regarding the credibility of medical experts; the availability of very limited administrative review procedures with little or no evidentiary record; the necessity of evidence regarding interpretation of the terms of the plan rather than specific historical facts; instances where the payor and the administrator are the same entity and the court is concerned about impartiality; claims which would have been insurance contract claims prior to ERISA; and circumstances in which there is additional evidence that the claimant could not have presented in the administrative process.

*Quesinberry*, 987 F.2d at 1027. No motion has been made for the court to consider additional evidence, and additional evidence is not necessary in order to dispose of the instant motion.

### B. Russell's Claim

■ Russell is entitled to full LTD benefits. As detailed above, UNUM does not dispute that Russell is disabled. *See* (Def.'s Cross–Mot.Summ.J. at 13.) UNUM simply asserts that, under the Plan, Russell's benefits are limited to one year because her disability is "based entirely on her own report of her symptoms to her physicians and is unsupported by any objective test[ ] results." (*Id.*) UNUM

has the authority and discretion to limit benefits for such a category; however, it must abide by the terms that it sets. UNUM abused its discretion in not following the terms and definitions set forth in the Plan.

Russell's condition does not fall under the "self-reported symptom" limitation, as defined by the Plan. Under the Plan, a condition based on "self-reported symptoms" is one where: "[T]he manifestations of your condition which you tell your doctor, that are not verifiable *using tests, procedures or clinical examinations, standardly accepted in the practice of medicine.*" (Pl.'s Mot.Summ.J. at 2; emphasis added.) Russell's condition does not fit within this definition because her claim is girded with a physician's examination and diagnosis based on objective tests accepted in the medical community. Russell's physician, Dr. John Riley, attests that Russell suffers from fibromyalgia, a diagnosable condition. In his affidavit, Dr. Riley states:

> [I]ndeed, Ms. Russell does have noticeable changes on her MRI which clearly objectively demonstrate conditions which contribute to her problems. Regarding her diagnosis of fibromyalgia, fibromyalgia by definition is not verified by objective medical tests such as MRIs or x-rays but fibromyalgia is diagnosed via the presence of 'pressure points.' Ms. Russell has demonstrated sensitivity in the relevant 'pressure points' and, therefore, to the extent that it can be verified by objective medical evidence, Ms. Russell's diagnosis of fibromyalgia is supported by the presence of the 'pressure points.' Therefore, the degenerative joint disease and polyarthologia which is intimately tied to the fibromyalgia is clearly demonstrated by the MRI which was taken and the fibromyalgia is demonstrated [by] all of the objective evidence by which it can be demonstrated.

(*Id.* Ex. H2.)[2] Therefore, it is clear that Dr. Riley: (1) used several tests, procedures, and examinations to examine Russell; (2) recognized that fibromyalgia is diagnosed through the use of a standardly accepted "pressure point" test; and (3) applied Russell's condition to the test to determine that she suffers from fibromyalgia. As a result, Russell's condition does not fall under the "self-reported symptom" limitation.

The essence of UNUM's argument is that fibromyalgia is not an objectively diagnosable disease. *See* (Def.'s Cross–Mot.Summ.J. at 10.) The courts disagree. "Fibromyalgia is a type of muscular or soft-tissue rheumatism that affects principally muscles and their attachment to bones, but which is also commonly accompanied by fatigue, sleep disturbances, lack of concentration, changes in mood or thinking, anxiety and depression." *Lang v. Long–Term Disability Plan of Sponsor Applied Remote Tech., Inc.*, 125 F.3d 794, 796 (9th Cir.1997) (citing The Arthritis Foundation, *Fibromyalgia*, Arthritis Foundation Pamphlet at 1, 5 (1992)). Recognizing the ability to detect and diagnose the condition, several courts have awarded disability benefits under ERISA for fibromyalgia. *See e.g., Lang*, 125 F.3d at 799; *Godfrey v. BellSouth Telecommunications, Inc.* 89 F.3d 755, 759–60 (11th Cir.1996). The *Godfrey* court noted that "fibromyalgia can be severely disabling and can only be diagnosed by an examination of the patient." *Godfrey*, 89 F.3d at 758. Hence, courts often affirm an administrator's denial of benefits when that decision is supported by one or more independent medical examinations. *See e.g., Robinson v. Phoenix Home Life Mut. Ins. Co.*, 7 F.Supp.2d 623, 632–33 (D.Md.1998) (denying benefits to fibromyalgia claimant based on two separate medical opinions); *Bremer v. Hartford Life & Accident Ins. Co.*, 16 F.Supp.2d 1057, 1061–1062 (D.Minn.1997) (same). Therefore, courts are aware that fibromyalgia is a diagnosable condition. More importantly, the medical community also recognizes this fact.

Physicians can look to objective factors to diagnose fibromyalgia. Dr. Riley points to several articles detailing the condition citing the basis of his "pressure point" test. *See* (Pl.'s Mot.Summ.J. Ex. H2.) This diagnostic test is not foreign to the medical profession. The record includes several journal articles detailing the existence of fibromyalgia and the methods used to diagnose the disease. *See* (*Id.*) Using the "pressure point" test used in the medical community, as well as viewing Russell's magnetic resonance image, Dr. Riley concluded that Russell suffers from fibromyalgia. Rather than challenge Dr. Riley's findings with its own medical examination, UNUM elected to have two registered nurses simply review Russell's file. *See* (Def.'s Cross–Mot.Summ.J. at 6, 9.) Therefore, the record contains only one authoritative medical opinion—Dr. Riley's affidavit and supporting records. UNUM's decision to ignore Dr. Riley and, instead, base its decision on the cursory review of two nurses was not reasonable. Accordingly, under the standard of review used in this case, the court finds that UNUM abused its discretion in denying LTD benefits to Russell. Therefore, it is

**ORDERED** that Russell's motion for summary judgment is GRANTED.

**IT IS SO ORDERED.**

---

2. UNUM argues that Dr. Riley himself told a UNUM representative that Russell did not suffer from fibromyalgia. *See* (Def.'s Cross–Mot. Summ.J. at 12–13.) UNUM bases this fact on notes made by the representative following a telephone conversation with Dr. Riley. *See* (*Id.*) This assertion holds little weight in light of the fact that Dr. Riley has filed a sworn affidavit attesting to his diagnosis.