[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 22, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-15156
Non-Argument Calendar

_____

D. C. Docket No. 01-02241-CV-HS-S

GLORIA WATTS,

Plaintiff-Appellant,

versus

BELLSOUTH TELECOMMUNICATIONS, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(February 22, 2007)**

Before TJOFLAT, CARNES and HULL, Circuit Judges.

PER CURIAM:

This is the second time we've had occasion to hear this ERISA case.  In the

first appeal we reversed and remanded the district court's grant of summary judgment for BellSouth based on Watts' failure to exhaust her administrative remedies.  Watts v. BellSouth Telecomm., Inc., 316 F.3d 1203, 1204 (11th Cir. 2003).  We concluded that the exhaustion bar does not apply where the failure to exhaust administrative remedies is the result of language in the summary plan description that the claimant reasonably interpreted as meaning that exhaustion was unnecessary.  Id.

On remand the district court again granted summary judgment for BellSouth. This time the district court predicated its decision on Watts' failure to present evidence raising a genuine issue of material fact about whether the decision of Kemper (BellSouth's designated claims administrator) to deny short and long term disability benefits to Watts was correct.  Watts appeals the summary judgment for BellSouth.

Watts first argues that the district court erred in granting summary judgment for BellSouth when it considered the report of Kemper's peer review physician as evidence that the denial of Watts' benefits claim was correct.  According to Watts, the peer reviewer's report is not medical evidence that can be considered by the district court because the peer reviewer did not conduct an examination or medical tests of Watts, and was limited in his review to the information Kemper gave him.

2

The district court did not err in considering the peer review report as evidence that the denial of Watts' benefits was proper.  As the district court explained, "the United States Supreme Court has clarified, in the area of ERISA, opinions of treating physicians are not entitled to any greater deference than those of reviewing physicians."  (R3:78:19) (citing Black & Decker Disability Plan v. Nord, 538 U.S. 822, 831, 123 S. Ct. 1965, 1970 (2003) (noting that nothing in ERISA "suggests that plan administrators must accord special deference to the opinions of treating physicians")).

Watts also contends that the district court used improper criteria to conduct its de novo review of the denial of benefits.  According to her, the district court, like Kemper, considered only objective evidence related to her claimed disability, even though BellSouth's disability plan did not provide that only objective evidence was relevant to the claim.

There are two problems with Watts' argument.  For one thing, where the plan puts the burden on the claimant to prove that she is disabled, it is implicit in the requirement of proof that the evidence be objective.  See, e.g., Brucks v. Coca-Cola Co., 391 F. Supp. 2d 1193, 1205 (N.D. Ga. 2005) ("The requirement that a plaintiff submit objective evidence of the impact of a diagnosed disease, illness or other condition is logical and necessary . . . .  The objective-evidence requirement

3

promotes integrity in the application of the law. It assures claimants are treated fairly and with parity by providing that coverage decisions are not based on varying subjective expressions by claimants of a disease, illness or condition with which they have been diagnosed. That is, it requires claimants to establish that the diagnosed disease, illness or condition results in an actual disability, not just a perceived one. The requirement of objective evidence also promotes integrity by assuring there is corroboration for a claimant's subjective complaints, thus deterring embellished allegations of the effect of the diagnosed malady as well as deterring fraud in the claims process."); Fisk v. Metro. Life Ins. Co., 347 F. Supp. 2d 1271, 1286–87 (S.D. Fla. 2004) ("Case law supports the conclusion that it is reasonable for a plan administrator to require objective medical evidence even where the plan does not specifically contain such a requirement. Where a plan requires proof of continued disability, 'the very concept of proof connotes objectivity.' . . . In the absence of a requirement of objective evidence, the review of claims for long-term disability benefits would be 'meaningless because a plan administrator would have to accept all subjective claims of the participant without question.' Furthermore, the fiduciary role of the plan administrator of scrutinizing claims, protecting the assets of a plan, and paying legitimate claims would be seriously compromised." (citations omitted)); Hufford v. Harris Corp., 322 F.

4

Supp. 2d 1345, 1356 (M.D. Fla. 2004) (same).

We disagree with Watts' assertion that our decision in Godfrey v. BellSouth Telecomm., Inc., 89 F.3d 755 (11th Cir. 1996), is to the contrary. Godfrey had nothing to do with the kind of evidence the claimant must proffer to prove that she is disabled. Rather, all the Godfrey Court said was that BellSouth could not limit payment of disability benefits to only those claimants who suffered a loss of functionality. Id. at 758. The reason is that the plan's definition of disability was not limited to only those disabilities that affected the claimant's functionality. Id. Disabled "can mean more than physical paralysis or limited limb movement." Id. In the present case, unlike in Godfrey, the plan explicitly defined disability as the inability to perform any type of work as a result of a physical or mental illness.

Watts' objective-evidence argument is problematic for a second reason. She does not point to any subjective evidence in the record which indicates that she is disabled. Instead, Watts exclusively relies on the reports of her treating physician and the independent medical examiner to support her contention that there exists a genuine issue of material fact about whether the denial of her benefits claim was wrong. But, as the district court explained, the descriptions by Watts' physician of Watts' condition "do not substantiate [her] inability to perform 'any type of work'—instead, and to the contrary, they help to bolster the correctness of the

5

decision to deny benefits." (R3:78:18). Likewise, the independent medical examiner's report "does not support an acuity of illness which would preclude any workability whatsoever." Id. at 18–19.

Thus, as the district court concluded, Watts has not pointed to any evidence in the record—subjective or objective—that would create a genuine issue of material fact about the correctness of the denial of benefits. The district court's summary judgment for BellSouth is due to be affirmed. Because summary judgment is appropriate even on de novo review of the correctness of the denial decision, it necessarily follows that Watts' contention that the plan administrator acted arbitrarily and capriciously in denying her benefits fails.

Watts also appeals the district court's order denying her petition for attorneys' fees. She contends that she should be awarded attorneys' fees for prevailing in her first appeal, which resulted in reversal of the summary judgment that was granted to BellSouth on exhaustion of administrative remedies grounds.

As Watts herself points out in her brief, "[t]he law provides no presumption in favor of granting attorney's fees to a prevailing claimant in an ERISA action." Freeman v. Cont'l Ins. Co., 996 F.2d 1116, 1119 (11th Cir. 1993). Instead, the decision to award fees should be guided by the following factors:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorney's fees;

(3) whether an award of attorney's fees would deter other persons acting under similar circumstances; (4) whether the parties requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

Nachwalter v. Christie, 805 F.2d 956, 962 (11th Cir. 1986). Of these, the district court said: "The court discretionarily determines that the Eleventh Circuit's administrative exhaustion ruling which, in a case of first impression, addressed an ambiguity exception to this long-standing ERISA remedial requirement and the lack of any evidence of bad faith or fault on the part of [BellSouth], counter against awarding any attorney's fees to [Watts] relating to the appellate process." (R3:83:6–7).

Even assuming that the award of attorneys' fees might be appropriate to an ERISA claimant who is not adjudged to have a valid claim, we cannot say that the district court's balancing of the Nachwalter factors was an abuse of discretion. See Florence Nightingale Nursing Serv., Inc. v. Blue Cross/Blue Shield of Ala., 41 F.3d 1476, 1485 (11th Cir. 1995) ("A denial of a petition for attorney's fees is reviewed for an abuse of discretion."). The district court's order denying Watts attorneys' fees for the first appeal is affirmed.

**AFFIRMED.**

7