FILED
United States Court of Appeals
Tenth Circuit

May 29, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

SHAWNNA MARIE ROMERO,

Plaintiff - Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

Defendant - Appellee.

No. 13-2200
(D.C. No. 1:12-CV-01164-LFG)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **HOLMES**, **ANDERSON**, and **BALDOCK**, Circuit Judges.

Shawnna Marie Romero challenges the Commissioner's denial of her

applications for disability and supplemental security income benefits.  Exercising

jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g), we affirm.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## *Background*

This case has a long procedural history with multiple agency decisions. The one now under review is the administrative law judge (ALJ)'s decision issued on August 2, 2012, which ultimately became the final agency decision.

Ms. Romero alleged an onset date of September 29, 2004, when she was injured in an auto accident; her date last insured for disability benefits was June 30, 2008. Employing the familiar five-step sequential evaluation process, *see Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010), at step one the ALJ found that Ms. Romero was not engaging in substantial gainful activity. At step two, she assessed Ms. Romero with the severe impairments of degenerative disc disease of the lumbar spine, depression, obesity, and fibromyalgia. She then found at step three that Ms. Romero's impairments did not meet or equal a listing. At step four, the ALJ assessed Ms. Romero's residual functional capacity (RFC) "to perform less than a full range of light work . . . except that claimant must be able to adjust her position between sitting and standing approximately hourly, and have occasional superficial contact with coworkers." Aplt. App., Vol. 3 at 583. She then determined that Ms. Romero could not perform any of her past relevant work. Continuing to step five, the ALJ concluded that there were jobs in the national economy that Ms. Romero could perform. Accordingly, she found her to be not disabled and denied her applications for benefits. The Appeals Council denied review and the district court (a magistrate judge presiding by consent of the parties) affirmed.

- 2 -

*Analysis*

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether correct legal standards were applied." *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Wilson*, 602 F.3d at 1140 (internal quotation marks omitted). Before this court, Ms. Romero focuses on the ALJ's evaluation of her credibility, arguing that the ALJ's analysis was legally insufficient and unsupported by substantial evidence. "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* at 1144 (brackets, citation, and internal quotation marks omitted).

Ms. Romero alleges that she suffers from disabling pain. A three-part framework applies to such allegations:

> (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a loose nexus between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

*Id.* (internal quotation marks omitted). Various factors are relevant to a credibility determination involving a claimant's subjective complaints of pain, including

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of

medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of non-medical testimony with objective medical evidence.

*Id*. at 1145 (internal quotation marks omitted).

The ALJ found that Ms. Romero's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Aplt. App., Vol. 3 at 583. She continued: "however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." *Id.*[1] As Ms. Romero notes, these statements are boilerplate, and we have discouraged ALJs from relying on boilerplate language in assessing a claimant's credibility. *See Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004). But we have also held that "use of . . . boilerplate is problematic only when it appears 'in the absence of a more thorough analysis.'" *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1170 (10th Cir. 2012) (quoting *Hardman*, 362 F.3d at 679).

Here, the ALJ went on to discuss various credibility factors explicitly. In examining the medical records, she stated with regard to Ms. Romero's degenerative disc disease and fibromyalgia that "[o]bjective medical findings . . . were relatively

---

[1] Relying on *Bjornson v. Astrue*, 671 F.3d 640, 645-46 (7th Cir. 2012), Ms. Romero urges this court to reverse because the ALJ's decision, apparently in accord with the standard decision template, sets forth the RFC finding before discussing the factors that go into making that finding, including the credibility determination. We decline to reverse on this ground.

benign," Aplt. App., Vol. 3 at 583, that she "was deemed neurologically intact and she was instructed by her doctor to get involved with exercise and stretching," *id.* at 584, and that she was taking medication for her fibromyalgia. With respect to Ms. Romero's depression, the ALJ noted that Ms. Romero was not always compliant with her doctors' recommendations to exercise; when she did increase her exercise, her depression lessened. The ALJ later noted that exercise also helped Ms. Romero's fibromyalgia. Further, she stated that an evaluating psychological specialist assessed only mild to moderate limitations in some areas and indicated that Ms. Romero is able to manage routine changes in an unskilled work setting, and that her "treating physician, at one time, indicated that [she] had the residual functional capacity to attend college, as well as have a part-time job." *Id.* In light of this more detailed discussion, we do not conclude that the ALJ's credibility analysis was legally inadequate.

Ms. Romero contends that these conclusions were not supported by substantial evidence, particularly with regard to her fibromyalgia. Although she concedes that "it was appropriate to rely on a lack of objective findings to evaluate the severity of her degenerative disc disease," she asserts that "it was not appropriate to gauge the severity of her fibromyalgia by the same evidence." Aplt. Opening Br. at 39. She believes that the ALJ's reliance on lack of medical findings "ignored the fundamental nature of fibromyalgia," because fibromyalgia's symptoms "are entirely subjective, and there are no laboratory tests to identify its presence or severity." *Id.* at 38. She

also asserts that the ALJ placed too much reliance on her physicians' recommendations to exercise, because "[w]hile Romero did experience some temporary improvements with exercise, primarily with her mood, the record also shows that her fibromyalgia pain often prevented her from exercising or was exacerbated by exercise [or] physical activity." *Id.* at 40. The Commissioner responds that the ALJ did not rely only on the lack of medical test results in evaluating Ms. Romero's fibromyalgia, but also on other factors.

"Because proving the disease is difficult, fibromyalgia presents a conundrum for insurers and courts evaluating disability claims." *Welch v. UNUM Life Ins. Co. of Am.*, 382 F.3d 1078, 1087 (10th Cir. 2004) (ellipsis and internal quotation marks omitted) (collecting cases); *see also Wilson*, 602 F.3d at 1143 (recognizing that "complaints of severe pain that do not readily lend themselves to analysis by objective medical tests are notoriously difficult to diagnose and treat" (collecting cases, including cases addressing fibromyalgia)). "Since fibromyalgia only manifests itself through clinical symptoms, there are no laboratory tests that can confirm the diagnosis." *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 627 n.1 (10th Cir. 2003). Thus, to the extent that the ALJ discounted Ms. Romero's fibromyalgia because of benign medical test results, she appears to have erred. But we do not consider this to be a reversible error in this case.

First, it is unclear to what extent the ALJ relied on test results to evaluate Ms. Romero's fibromyalgia, as distinguished from her degenerative disc disease.

(As Ms. Romero concedes, the ALJ was entitled to rely on the records in connection with her degenerative disc disease.) Second, as the Commissioner points out, with regard to fibromyalgia the ALJ also explicitly relied on permissible factors, including that Ms. Romero experienced some relief from amitriptyline and that she was prescribed exercise, which helped when she engaged in it. The record supports these conclusions: Ms. Romero's physicians consistently urged her to exercise, and at least two treating physicians told her that exercise was crucial to treating her fibromyalgia. On many visits, Ms. Romero did report some relief from exercise. However, she also repeatedly lapsed, sometimes due to lack of motivation. To the extent Ms. Romero highlights other evidence in her favor and contests the weight the ALJ gave to these particular factors, she asks that we reweigh the evidence and displace the agency's choice, which we cannot do, *see Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007); *Barnett*, 231 F.3d at 689.

Finally, Ms. Romero argues that her activities of daily living and the recommendations of her physicians that she get a part-time job or attend school do not establish that she was not disabled. She points out that when she did attend school, her pain caused her to skip some classes and have some trouble sitting and carrying books. But her daily activities and her physicians' recommendations were relevant evidence to be considered by the ALJ, and the ALJ's findings were supported by substantial evidence. Again, we do not reweigh the evidence and displace the agency's choice. *See Lax*, 489 F.3d at 1084; *Barnett*, 231 F.3d at 689.

- 7 -

The judgment of the district court is affirmed.

Entered for the Court


Jerome A. Holmes
Circuit Judge