FILED
United States Court of Appeals
Tenth Circuit

August 2, 2018

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

GINA M. ARTERBERRY,

      Plaintiff - Appellant,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security
Administration,

      Defendant - Appellee.

No. 17-7068
(D.C. No. 6:16-CV-00233-KEW)
(E.D. Okla.)

_____

ORDER AND JUDGMENT[*]
_____

Before **LUCERO**, **HARTZ**, and **MORITZ**, Circuit Judges.
_____

      Gina Arterberry appeals a district court order affirming the Social Security

Administration ("SSA") Commissioner's denial of her applications for supplemental

security income ("SSI") and disability insurance benefits ("DIB").  Exercising

jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g), we affirm.

---

     [*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

# I

Arterberry suffers from fibromyalgia, carpal tunnel syndrome, left shoulder injury, obstructive sleep apnea, migraine headaches, lumbar disc disease, cervical disc disease, angina, left knee strain/sprain, post-traumatic stress disorder, dyslexia, and major depression. She has an eighth-grade education and has worked in a variety of jobs, including as a truck driver and nursing assistant. In October 2012, she sought SSI and DIB, stating she had become disabled as of June 2012, at the age of 35. The Commissioner denied her applications initially and on reconsideration.

An administrative law judge ("ALJ") conducted a hearing at which Arterberry and a vocational expert ("VE") testified. Afterward, the ALJ concluded at step five of the familiar five-step sequential disability analysis, see 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), that Arterberry was not disabled because she possessed the residual functional capacity ("RFC") to perform other jobs. In reaching that conclusion, the ALJ assigned her an RFC for sedentary work that involved, among other things, simple work-related decisions and tasks; lifting/carrying and pushing/pulling no more than ten pounds occasionally and five pounds frequently; sitting for up to six hours, standing for up to two hours, and walking for up to two hours; the option to sit or stand with a positional change at least every thirty minutes; and frequent interactions with supervisors and coworkers.

Despite Arterberry's testimony describing severe pain throughout her body and the inability to "get the [bed] covers off of [her] . . . first thing in the morning," the ALJ declined to write an even more restrictive RFC, finding her testimony not entirely credible based on the medical evidence in the record. The ALJ also discounted the

opinions of Arterberry's treating physicians, Dr. Sangeeta Khetpal and Dr. Aaron Brown, to the extent they suggested more severe functional limitations than provided in her RFC.

The Social Security Administration's Appeals Council upheld the ALJ's decision, prompting Arterberry to petition the federal district court for relief. The district court affirmed. Arterberry now appeals, arguing that the ALJ erred in evaluating the treating physicians' opinions and her credibility.

## II

We review de novo the district court's ruling in a social security case and "independently determine whether the ALJ's decision is free from legal error and supported by substantial evidence." Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009) (quotation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010) (quotation omitted).

## A

Arterberry argues that the ALJ erred by giving Dr. Brown's opinions little weight. Dr. Brown opined that Arterberry had no ability to accept work-related instructions or respond appropriately to criticism and only limited abilities in the areas of attendance/punctuality, attention/concentration, decisionmaking, performance, coworker interactions, coping with stress, and responding to work changes. According to the VE, the limitations identified by Dr. Brown would preclude all work.

The ALJ offered four reasons for discounting Dr. Brown's opinions: (1) he had seen Arterberry only two or three times before rendering those opinions; (2) his opinions

were inconsistent with the record medical evidence, such as his own examinations, which "show[ed] essentially normal mental status testing"; (3) Arterberry had not previously sought any specialized mental health treatment; and (4) Arterberry's "treatment has consisted of nothing more than basic medication management with no hospitalizations or even counseling services." We conclude that the ALJ did not err in his treatment of Dr. Brown's opinions.

An ALJ must either give controlling weight to a treating physician's opinion or "articulate[] specific, legitimate reasons for his decision, finding, for example, the opinion unsupported by medically acceptable clinical and laboratory diagnostic techniques or inconsistent with other substantial evidence in the record." Raymond v. Astrue, 621 F.3d 1269, 1272 (10th Cir. 2009) (citation and quotation omitted). With one exception, the ALJ's opinion did these very things.

In deciding how much weight to give a treating source's opinion, the ALJ must consider how "long[] [the] treating source has treated [the claimant]" and whether it was "long enough to have obtained a longitudinal picture of [the claimant's] impairment." 20 C.F.R. § 404.1527(c)(2)(i). "Very infrequent" medical visits support discounting a treating physician's opinion. See Branum v. Barnhart, 385 F.3d 1268, 1275-76 (10th Cir. 2004) (quotation omitted). Substantial evidence supports the ALJ's observation that Dr. Brown's defined limitations were not consistent with the medical evidence, including his own mental examinations. And the ALJ accurately noted that Dr. Brown's treatment plan was limited to medication management. The nature and extent of the treatment

4

provided are legitimate grounds for assessing the weight of a treating physician's opinions. See 20 C.F.R. § 404.1527(c)(2)(ii).

The ALJ also stated that Arterberry had not previously sought specialized mental health treatment, and Dr. Brown reported "no formally diagnosed mental illness." But there is no indication that the ALJ considered alternative explanations for Arterberry's lack of a specialized prior treatment history. Consequently, Arterberry's failure to seek specialized mental-health treatment is not particularly enlightening.

In support of Dr. Brown's opinions, Arterberry points to a mental examination conducted in 2010 by Dr. Shalom Palacio-Hollmon as part of a prior unsuccessful application for disability benefits. Dr. Palacio-Hollmon opined that Arterberry would "likely . . . require structure[,] supervision and support to meet the demands of the work environment" due to "anxiety, depressive symptoms, and impaired concentration and short-term memory." Arterberry complains that Dr. Palacio-Hollmon's opinion was mentioned by neither the ALJ nor the state-agency psychiatrist and psychologist who reviewed her medical records and found no medically determinable mental impairments.

Arterberry's reliance on Dr. Palacio-Hollmon's opinion is misplaced. She cites no authority, and we have found none, requiring an ALJ and agency reviewers to discuss the opinions of a consultative examiner from a prior disability proceeding—one that may have involved different medical issues and evidence, and that resulted in a denial of benefits. Indeed, an ALJ is not even required to discuss every piece of evidence in the ongoing disability proceeding, so long as the record shows she considered all of the evidence. See Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Further, it is

5

unclear whether Dr. Palacio-Hollmon's opinions actually support Dr. Brown's defined limitations or undermine the ALJ's RFC findings in any significant way. Even if Dr. Palacio-Hollmon's opinions "may . . . have supported contrary findings, we may not displace the agency's choice between two fairly conflicting views." Oldham v. Astrue, 509 F.3d 1254, 1257-58 (10th Cir. 2007) (quotation and brackets omitted).

Arterberry also challenges the ALJ's consideration of Dr. Brown's report of a Global Assessment of Functioning ("GAF") score of 50, which indicates "serious symptoms or serious impairment in . . . occupational . . . functioning." Langley v. Barnhart, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004) (brackets, ellipsis, and quotation omitted). But the ALJ considered the GAF score along with the other medical evidence, and thus we do not discern error. See Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy.").

**B**

Arterberry argues the ALJ erred by giving Dr. Khetpal's opinions "limited weight." This issue centers on a clinical-assessment form that Dr. Khetpal completed in June 2014. On the form, Dr. Khetpal assigned Arterberry the most severe limitation possible for each listed category. And in some categories, he provided limitations exceeding the most severe designation on the form. For instance, in regard to Arterberry's ability to stand/walk and sit during a regular work day, Dr. Khetpal wrote "none." In regard to Arterberry's ability to work if given options to sit/stand and rest, Dr. Khetpal checked the "none" category and wrote in the margin, "[patient] cannot perform

6

any activities." Further, as to whether Arterberry's impairments would produce "good days and bad days," Dr. Khetpal wrote in the margin, "all bad days mostly."

Dr. Khetpal based his assessments on diagnoses of fibromyalgia, irritable bowel syndrome, and depression—all of which were severe. He indicated that Arterberry exhibited objective signs of pain from joint deformity, muscle spasm, spinal deformity, and limitation of motion. Finally, when asked on the form to estimate Arterberry's functional limitations in a competitive work environment, Dr. Khetpal wrote in the margin, "cannot be place[d] in work."

The ALJ discounted Dr. Khetpal's opinions, finding that he "overestimate[d] . . . the severity of [Arterberry's] functional restrictions."[1] Dr. Khetpal's opinions "contrast[ed] sharply with his own treatment records and other evidence in [the] record." In a June 2014 treatment record, Dr. Khetpal reported that Arterberry had intact motor and sensory function, reflexes, gait and coordination. And he recommended that she "consider [a] job or environment change" and "try . . . yoga, regular exercise, [and] stretching exercises . . . to see if she derives any benefit." The ALJ also cited

---

[1] The district court described the ALJ's observation as "an understatement," adding that "[a]n individual with the level of limitations found by Dr. Khetpal could find it difficult to exist." Arterberry takes issue with these characterizations, complaining that both the ALJ and the district court "are impermissibly crossing into the medical field." Our review does not encompass the district court's determinations; rather, our review concerns the ALJ's findings and conclusions. Further, by determining what weight to afford Dr. Khetpal's opinions, the ALJ was not "overstepp[ing] his bounds into the province of medicine," Miller v. Chater, 99 F.3d 972, 977 (10th Cir. 1996). Rather, the ALJ was complying with his obligation to "determin[e] a claimant's RFC from the medical record," Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004), which includes "consider[ing] and address[ing] medical source opinions," SSR 96-8p, 1996 WL 374184, at *7.

inconsistencies between Dr. Khetpal's opinions and medical record evidence showing "full range of motion, full strength, and no neurological deficits with benign diagnostic imaging and testing." We conclude that substantial evidence in the record supports the ALJ's decision to give Dr. Khetpal's opinions limited weight.[2]

## C

Arterberry also argues that the ALJ failed to properly assess her credibility. "[C]redibility determinations are peculiarly the province of the finder of fact, and should not be upset if supported by substantial evidence." White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2001) (quotation omitted).[3]

The ALJ thoroughly reviewed the medical evidence and fully substantiated his conclusion that Arterberry's subjective reports of her symptoms and limitations were inconsistent with the record. He specifically identified essentially benign diagnostic imaging and testing along with rather unremarkable neurological findings. He noted that during an appointment for management of her fibromyalgia just four months before her disability hearing, Arterberry reported that with her new medication regimen, she was

---

[2] We acknowledge, as does the Commissioner, that record evidence supports Dr. Khetpal's observation that Arterberry has pain with range of motion in her neck, back and knees. But the extreme functional limitations Dr. Khetpal offered were properly discounted by the ALJ. To the extent Arterberry complains that the ALJ erred by imposing a more restrictive RFC and different mental limitations than suggested by agency doctors, "her argument[s are] perfunctory and therefore waived." Ross v. Univ. of Tulsa, 859 F.3d 1280, 1291 (10th Cir. 2017).

[3] Recently, the SSA "eliminat[ed] the use of the term 'credibility' from [its] sub-regulatory policy" and "clarif[ied] that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3P, 2017 WL 5180304, at *2.

"significantly better compared to where she was 5 years ago," despite some "residual pain." And he cited a physical therapy record stating she was "Self Care Independent," and he noted that Dr. Khetpal repeatedly recommended that she try regular exercise.

Arterberry cites evidence that her mother and daughter support the severity of her claimed limitations. The ALJ discounted those third-party opinions as highly subjective and contrary to the evidence. We discern no error and reiterate that we are not at liberty to overturn an ALJ's decision that is supported by substantial evidence. See Oldham, 509 F.3d at 1257-58.

To the extent that Arterberry faults the ALJ for "ma[king] the credibility determination after formulating [her] RFC," she ignores the analytical reality that "the ALJ's credibility and RFC determinations are inherently intertwined." Poppa v. Astrue, 569 F.3d 1167, 1171 (10th Cir. 2009). And particularly relevant here, the ALJ did not discredit Arterberry simply because her testimony differed from the RFC assessment. Rather, the ALJ found that the severity of her claimed limitations was not supported by the record medical evidence, which provided the basis for the ALJ's RFC determination. See Romero v. Colvin, 563 F. App'x 618, 620 n.1 (10th Cir. 2014) (declining to reverse simply "because the ALJ's decision, apparently in accord with the standard decision template, sets forth the RFC finding before discussing the factors that go into making that finding, including the credibility determination").

Arterberry also argues that "[i]t is incorrect for the ALJ to expect that the severity of [her] complaints must be supported by the objective medical evidence." Granted, an ALJ may "not reject [a claimant's] statements about the intensity and persistence of . . .

9

pain or other symptoms or about the effect . . . symptoms have on [the claimant's] ability to work solely because the available objective medical evidence does not substantiate [the claimant's] statements." 20 C.F.R. § 404.1529(c)(2); see also id. § 416.929(c)(2). But the ALJ did not rely on the absence of corroborating evidence; rather, he relied on the objective medical evidence throughout the record, which was inconsistent with Arterberry's claimed severe limitations.

Finally, Arterberry raises a number of meritless miscellaneous arguments. Insofar as she complains that the ALJ failed to account for medication side effects, she testified that the only side effects were heartburn and indigestion, and she does not suggest any limitations from those side effects. To the extent she faults the ALJ for overlooking that "[a] clerk who worked for SSA noted [she] had difficulty sitting, standing and walking, was stiff and sore in her movements, and needed to sit and stand during her interview," the clerk's note appears to be from Arterberry's prior disability proceeding, in which she was found not disabled.

### III

AFFIRMED.

Entered for the Court

Carlos F. Lucero
Circuit Judge

10